Dirven D. REEVES, Plaintiff-Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.

No. 83–7079.

United States Court of Appeals, Eleventh Circuit.

May 29, 1984.

Nelson Simmons, Jr., Legal Services of North-Central Alabama, Inc., Decatur, Ala., for plaintiff-appellant.

Elyse Sharfman, Dept. of HHS, Atlanta, Ga., for defendant-appellee.

Before GODBOLD, Chief Judge, RONEY and TJOFLAT, Circuit Judges.

PER CURIAM:

The Secretary denied disability insurance and SSI benefits to a 37 year-old man who suffers from hip and back problems, a hearing deficit, and a psychological condition. The district court found substantial evidence to support the Secretary's decision and affirmed. Because the Secretary failed to follow her own regulations, we vacate and remand for further consideration under proper legal standards.

The medical evidence in the record shows that in April 1979 Reeves fractured his hip in a fall, was hospitalized for ten days, and his hip was pinned. At this time, "early changes of degenerative hip disease" were seen. 2 Rec. at 168.

Dr. Blanton, Reeves's treating physician, examined claimant in February 1980. He diagnosed deafness, chronic lumbar spine derangement, painful left hip from hip pain and plate, and extreme tension. *Id.* at 159. Dr. Blanton reported that "[i]n my opinion he is disabled from any regular gainful work." *Id.*

Dr. Blanton conducted another exam in November 1980. He noted that the patient had

> marked deafness left ear[,] [f]racture left hip in N.C. April 8, 1979. Limps when walks. Still has steel pin in hip which is very tender in muscle tissue around it.
>
> Cannot stand up over one hour without sitting down. In 1969 while working in a winery he was carr[ying] a heavy tank and foot slipped and strained low back severely. Can push up a 25 lb weight but could not do it over 2 times in an hour. Cannot bend, pull, stretch, lift, climb, or stand.

*Id.* at 160.

Dr. Branning examined the claimant for SSA in May 1980. He concluded that Reeves suffered from:

(1) Fractured left femur, healing but painful.

(2) Decreased hearing secondary to multiple infections as a child.

(3) Subnormal intelligence.

(4) History of syncopal spells and possible seizure disorder.

*Id.* at 189. The doctor noted that "[t]he patient might very well benefit from further evaluation from an orthopedic surgeon." *Id.*

After the examination, Dr. Branning filled out a physical capacities evaluation. He concluded that claimant could lift and/or carry 50 pounds occasionally to 25 pounds frequently, could stand and walk one hour a day, could sit and work as much as six out of eight hours, and was restricted as to pushing and pulling (arm and/or leg controls), climbing and balancing, and bending and/or stooping movements. *Id.* at 190.

Dr. Branning evaluated Reeves again in February 1981. He diagnosed

(1) Apparent degenerative joint disease of low back and both hips.

(2) Chronic left hip pain secondary to previous surgery and/or associated degenerative changes.

(3) Marked decrease in auditory acuity.

(4) Chest pain likely musculoskeletal in origin.

(5) Chronic anxiety.

*Id.* at 193. The doctor concluded that

> [g]enerally speaking, the patient's most limiting condition would be that of his left hip and the resulting pain from the previous fracture and surgical treatment. The patient might very well benefit from further evaluation by an orthopod to see if the removal of this plate and/or other therapy might be indicated in helping alleviating this patient's discomfort and returning him to normal ambulation. As best as I can determine, there is no obvious reason for his discomfort. Admittingly [sic], he does have some degenerative changes but they do not appear to be significant enough to result in the kind of discomfort and resultant limp that he states he has.

*Id.*

■ Despite Dr. Branning's recommendations, Reeves was not examined by an orthopedist.[1]

A radiologist, Dr. Sewell, examined Reeves in January 1981 and found slight narrowing in the space at L–5, S–1, degenerative changes in the hip, and no identifiable abnormalities in the femoral shaft. *Id.* at 194.

Taylor, a clinical audiologist, examined Reeves for SSA. He found that Reeves appeared to have

a sensori-neural hearing loss in each ear: mild-to-moderate in the right ear and moderate in the left ear .... Discrimination among spoken words is moderate-to-poor in the left ear and poor in the right ear. Based on today's findings, Mr. Reeves will have difficulty hearing in all listening situations. A hearing aid may provide worthwhile benefit, more so in a quiet one-to-one situation....

Mr. Reeves should be seen for an evaluation by on [sic] otolaryngologist.

*Id.* at 183–84.

After this evaluation, Reeves received a hearing aid for one ear. *Id.* at 49. With the hearing aid he "can do pretty well," and the aid "doesn't make it perfect but it helps." *Id.*

LeMay, Reeves's counselor at the North Central Alabama Mental Health Center, diagnosed inadequate personality. *Id.* at 203. He found Reeves

to have a difficult time relating to others due to several factors, mainly his extreme anxiety, sadness, and his strong feelings of guilt about those feelings.... Client also appears to have a noticeable deficiency in short and long term memory. It is a remote possibility that client may have some organic brain damage, but the Mental Health Center does not have appropriate facilities to diagnose, or rule out this possibility.

Current treatment goals are to assist client in accepting his feelings of sadness and reduce anxiety. Due to client's apparent lack of external resources and limited insight, prognosis remains poor.

Dr. Haney, a neuropsychiatrist, examined Reeves for SSA. He reported that Reeves was on time for the appointment and understood full well the reason for being here. He claimed confusion as to time, no knowledge of recent events of any interest, walked with a halting gait, and continually moaned and complained of back pain and head discomfort throughout the entire visit.... His impression was one of marked sadness, almost tearful at times. His replies for the most part were spontaneous, but he had to be prodded into giving adequate information, continually stopping to impress the interviewer that he had a bad memory was [sic] was confused. There was no evidence of psychotic activity in the form of bizarre preoccupations, delusions, or hallucinations. There was no cognotive [sic] deficit noted, nor any evidence of organicity. His descriptions of black out [sic] spells were extremely vague but he states he has had only or [sic] or two brief ones since his accident in 1977. These do not appear to be seizure activity of any type. He is of average intelligence and his judgment is adequate to manage any funds he might receive....

His somatic complaints are not constant, nor his description consistent with any real pathology. I feel he is currently markedly depressed and would be a poor candidate for any type of employment or rehabilitation at this time.

*Id.* at 204–05.

Reeves applied for disability insurance and SSI benefits in September 1980. His application was denied initially and on re-

---

1. While we do not base our decision on this issue, the ALJ failed to order a consultative examination by an orthopedist even though the SSA's consulting doctor recommended such an evaluation. The regulations provide that the ALJ may order a consultative examination when warranted. 20 C.F.R. Sec. 404.1517 (1983). It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision. *Ford v. Secretary of Health and Human Services,* 659 F.2d 66, 69 (5th Cir. 1981) (Unit B). On remand the ALJ should consider the need for an orthopedic evaluation.

consideration. He requested and received a hearing before an Administrative Law Judge, where he was represented by a paralegal. Reeves was the only witness.

At the hearing Reeves indicated that he believed he became disabled approximately two years earlier when he fractured his hip. *Id.* at 44–45. He also stated that he had had high blood pressure five or six years ago and had to be hospitalized because he had had a blackout and was in a car accident. *Id.* at 45. He explained that he was not presently on any medicine because he could not afford it. *Id.* at 46. However, he noted that no doctor had prescribed any medicine since he had high blood pressure. *Id.* He reported that he sleeps well sometimes but not others, can go grocery shopping, reads the newspapers occasionally, rides his bike, watches TV, can walk around the block, can stand for a while if he has first sat, and can lift five pounds and even ten as long as he did not have to do so all day. *Id.* at 46–48. He testified that he cannot climb stairs and does not drive. *Id.* at 47–48. In response to a question from the ALJ, Reeves stated that he thought he could be an attendant at a self-service gas station, although he does not like to handle money. *Id.* at 52.

The ALJ denied benefits. He concluded: In summary, the claimant sustained a hip injury which has resulted in some limitation of motion. Limitation of motion and pain are shown by subjective means entirely as physicians have found no pathology or radiologically demonstrable deficits. The claimant has a hearing impairment of long duration which has been essentially corrected by a hearing aid. There is evidence that the claimant has experienced depression and anxiety together with nervousness, but there does not appear to be the necessity for medication. No persistent maladaptive patterns of behavior were manifested, [sic] there is no evidence of seclusiveness or autistic thinking, pathologically inappropriate suspicion or hostility, marked restriction of daily activities, constriction of interests or deterioration in personal hab-

its or an inability to relate to other people. On the contrary, the claimant is a neat, poised individual who speaks and relates well with others. He does appear on occasions of medical examinations to amplify physical and mental problems. The claimant apparently has some minimal problems with degenerative joint disease of the low back and both hips. He has experienced chest pain which is likely musculoskeletal in origin and not of cardiac origin....

After reviewing the entire record, the undersigned is satisfied that his impairments are not that severe. Consequently, the claimant may be found disabled only if, as noted above, he is unable to return to his past relevant work or if other jobs do not exist in the national economy which he can perform in view of his age, education, and relevant work experience.

The Administrative Law Judge has considered the element of pain as described by the claimant and as recorded in the medical reports history. Pain may serve as a basis for disability. The issue is not the existence of pain, but whether the pain suffered by the claimant is of sufficient severity so as to preclude engagement in any work. After evaluating the evidence and considering its credibility and weight, it is expressly found that the claimant's abilities are not impaired to the point so as to preclude all substantial gainful employment. The Administrative Law Judge appreciates the fact that the claimant has and does sometimes suffer pain; however, it is expressly the opinion of the Administrative Law Judge that that pain does not disable him within the meaning of the Social Security Act, as amended....

It is clear that the claimant has some medical problems and has experienced some pain. However, the undersigned does not believe that taken as a whole the record shows him to be incapable of all work activities. It appears that he can sit throughout a workday with occasional changes in position which would not normally cause him pain or excessive

discomfort. There is very little objective clinical evidence of conditions which could precipitate disabling pain. Combined, the claimant's impairments can be expected to limit him to at least a wide range of sedentary work activities. A restriction to a wide range of sedentary work is based upon his subjective complaints of pain and limitation of motion. *Id.* at 29–30.

The Appeals Council denied review. Reeves appealed to the district court, which affirmed the denial of benefits. Reeves timely appealed to this court.

In his summary of the evidence the ALJ stated that "[l]imitation of motion and pain are shown by subjective means entirely as physicians have found no pathology or radiologically demonstrable deficits." *Id.* at 29. This is an erroneous conclusion, as Drs. Blanton, Branning, and Sewell all diagnosed hip or back problems. However, the error is harmless; as appears from our discussion below, the ALJ considered the medical evidence when making the disability determination.

■ When evaluating Reeves's claim of disabling pain, the ALJ noted that "[t]here is very little objective clinical evidence of conditions which could precipitate disabling pain." *Id.* at 30. The ALJ did recognize that "[i]t is clear that the claimant ... has experienced some pain. However, the undersigned does not believe that taken as a whole the record shows him to be incapable of all work activities." *Id.* The record supports this determination. Dr. Blanton, Reeves's treating doctor, found that he could not stand for more than one hour without sitting down, could push 25 pounds but not more than twice in one hour, and could not bend, pull, stretch, lift, climb, or stand. *Id.* at 160. Dr. Branning determined that claimant could lift and/or carry 50 pounds occasionally to 25 pounds frequently, could stand and walk one hour a day and sit six out of eight hours, and was restricted as to pushing and pulling movements (arm and/or leg controls), climbing and balancing, and bending and/or stooping movements. *Id.* at 190. Reeves himself testified that he could lift five pounds and ten pounds as long as he did not have to do it all day, could stand if he sits for a while, could walk at least a block at a time, and could ride a bike. *Id.* at 47–48. He also explained that he thought he could be an attendant at a self-service gas station. *Id.* at 52. This record, including the claimant's own testimony as to his capabilities, provides substantial support for the ALJ's determination that Reeves's pain is not disabling.

The ALJ found that Reeves's hearing problem is "essentially corrected" by a hearing aid. Reeves's own testimony indicates that with the aid he "can do pretty well" and the aid "doesn't make it perfect but it helps." *Id.* at 49. Substantial evidence supports the ALJ's determination that claimant's hearing problem is basically corrected.

■ The ALJ determined that claimant could perform a wide range of sedentary work. Reeves's claims of non-exertional impairments did not require the ALJ not to use the grids, because none of Reeves's non-exertional impairments were so severe as to prevent a full range of gainful employment at the designated level. *Kirk v. Secretary of HHS*, 667 F.2d 524, 537 (6th Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983).

■ In making his disability determination, the ALJ considered Reeves's mental condition although this problem was not raised in Reeves's application to the SSA or at the oral hearing. The ALJ noted:

the claimant has experienced depression and anxiety together with nervousness, but there does not appear to be the necessity for medication. No persistent maladaptive patterns of behavior were manifested, [sic] there is no evidence of seclusiveness or autistic thinking, pathologically inappropriate suspicion or hostility, marked restriction of daily activities, constriction of interests or deterioration in personal habits or an inability to relate to other people. On the contrary the claimant is a neat, poised individual who speaks and relates well to others.

*Id.* at 29. Given Reeves's conduct at the hearing, his lack of medication, and the lack of any evidence of psychotic activity, cognitive deficit, or organicity, the ALJ's determination that Reeves's mental condition was not disabled is supported by substantial evidence.

■ 20 C.F.R. Sec. 404.1522 (1983) requires the ALJ to consider the combination of a claimant's impairments. The reason for this is so obvious that it requires no discussion. The ALJ considered Reeves's impairments separately but not together; this failure to follow the regulations requires that the case be remanded for further consideration under the appropriate standards. As the court explained in *Strickland v. Harris,* 615 F.2d 1103 (5th Cir.1980),

> [t]he ALJ failed to address at all a fact issue raised herein which was essential to a conclusion of no disability, namely, the degree of impairment caused by the *combination* of physical and mental medical impairments. The ALJ addressed certain of the claimant's complaints separately, tending to minimize them ..., but he devoted no discussion and made no factfindings as to disability indicated as arising from the interaction or cumulation of ... those medical problems whose existence he acknowledged.

*Id.* at 1110 (emphasis in original); *accord Wiggins v. Schweiker,* 679 F.2d 1387, 1392 (11th Cir.1982); *Ferguson v. Schweiker,* 641 F.2d 243, 250 & n. 9 (5th Cir.1981) (Unit A); *Brenem v. Harris,* 621 F.2d 688, 690 (5th Cir.1980).

At the time of the ALJ's decision Reeves was 37. The ALJ found that Reeves was a younger individual with a tenth grade education who was capable of sedentary work. Transferability of skills was not determined. Had Reeves been 50 rather than 37 and either unskilled or without transferable skills, he would have been disabled under the grids. *See* 20 C.F.R. Part 404, Subpart

P, App. 2, Rules 201.09 and 201.10 (1983). Consequently this case presents the issue of the validity of the grids.

In *Broz v. Schweiker,* 677 F.2d 1351 (11th Cir.1982), *vacated and remanded sub nom. Heckler v. Broz,* — U.S. ——, 103 S.Ct. 2421, 77 L.Ed.2d 1311, *adhered to,* 711 F.2d 957, *modified,* 721 F.2d 1297 (11th Cir.1983), this court held that the Secretary could not use the grids that the Secretary had adopted concerning age to establish conclusively a claimant's ability to adapt to a new work environment because the age [2] factor was not amenable to legislative factfinding and had to be determined on an individual basis. *Broz I,* 677 F.2d at 1360. We expressly declined to decide how individual consideration of the age/ability to adapt factor should be done. *Id.* at 1361.

■ Under the statutory scheme, once a claimant has proved that he can no longer perform his past relevant work, the burden shifts to the Secretary to prove that claimant can perform substantial gainful activity that exists in the national economy. *Id.* at 1355. In discharging this burden the Secretary may use the age factor as applied in the grids as evidence of the claimant's ability to adapt to a new work environment, but this age factor shall not be conclusive. If the claimant then proffers substantial credible evidence that his ability to adapt is less than the level established under the grids for persons his age, the Secretary cannot rely on the age factor of the grids and must instead establish the claimant's ability to adapt to a new work environment by independent evidence. *Cf. Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (establishing a tripartite scheme of burden of production in Title VII cases). Applied specifically to this case, this burden of production scheme allows the Secretary to rely in the first instance on the age grids, but, if Reeves introduces evidence that his ability to adapt is more limited

---

**2.** Congress mandated that the Secretary consider the age factor in making disability determinations. 42 *U.S.C.* Sec. 423(d)(2)(A) (1976) provides:

> an individual ... shall be determined to be under a disability only if his physical or men-

tal impairment or impairments are of such severity that he is not only unable to do his previous work but *cannot,* considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy....

than that presumed by the grids for 37 year-olds, the Secretary must prove Reeves's ability to adapt by other evidence.

Because we have not previously decided how to apply *Broz*, the evidentiary determination we describe has not been made in this case. The record shows that the ALJ applied the age grids in a mechanical fashion. Consequently, on remand the district court should give Reeves an opportunity to make to it a proffer of evidence on this issue. If Reeves makes a proffer of substantial evidence that an ALJ could find credible and tending to show that the claimant's ability to adapt to a new work environment is less than the level established under the grids for persons his age, the district court shall remand the case to the Secretary and direct that the Secretary reconsider the age/ability to adapt issue. If the claimant does not make such a proffer, the ALJ's mechanistic use of the age grids would be harmless error and there would be no need for the Secretary to reconsider the age/ability factor.[3]

VACATED and REMANDED to the district court for further proceedings consistent with this opinion.

---

3. In such event, where a remand is not otherwise required, the district court should simply affirm.