**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 18 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

WILMER DANIELS,

        Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

        Defendant-Appellee.

No. 98-5004

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 96-CV-784-M)

Submitted on the briefs:

Paul F. McTighe, Jr., and Gayle L. Troutman, Tulsa, Oklahoma, for Plaintiff-
Appellant.

Stephen C. Lewis, United States Attorney, Tina M. Waddell, Chief Counsel,
Region VI, Christopher Carillo, Lead Attorney, SSA-Office of the General
Counsel, Dallas, Texas, for Defendant-Appellee.

Before **TACHA** and **McKAY**, Circuit Judges, and **BROWN,**[*] Senior District
Judge.

---

[*]     Honorable Wesley E. Brown, Senior District Judge, United States District Court
for the District of Kansas, sitting by designation.

**BROWN** , Senior District Judge.

The primary question on this appeal is whether the Commissioner adequately considered the fact that claimant Wilmer Daniels was only a little more than two months short of being in an age category in which he would be presumptively disabled, when the Commissioner found him not disabled based on the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "grids"). Because we conclude that, contrary to agency regulations and rulings, the Commissioner failed to consider the fact that claimant fell within a "borderline" age situation and therefore improperly applied the grids "mechanically," we must remand the case for further consideration. [1]

I.

Mr. Daniels filed a claim for disability insurance benefits in January 1989, alleging disability since April 1988 due to pain in the back, left hip, shoulders, hands and chest and due to depression. The claim was denied administratively (in June 1991), but Mr. Daniels successfully challenged that denial in his first case

---

[1]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

brought in the district court. Concluding that a post-hearing report submitted by the Commissioner's (then, the Secretary of Health and Human Services) medical expert was "vague and of little objective value," Appellant's App. Vol. II at 208, 204, the district court remanded the case in April 1993 for testimony by the expert at a supplemental hearing. For reasons unclear from the record, the case was not remanded by the Appeals Council to the Administrative Law Judge (ALJ) until July 1994, and the supplemental hearing was not held until December 1995.[2] The ALJ issued his decision denying benefits in February 1996, and that decision became the final decision of the Commissioner when the Appeals Council denied review in July 1996.

The ALJ found that Mr. Daniels was severely impaired due to shoulder, back and pulmonary problems, that he did not have a listed impairment, that he could perform the full range of light work, but that he could not perform his past relevant heavy work mounting tires and lubricating cars. The ALJ then turned to the grids, making the following findings:

> 8.      The claimant was under 55 years of age at all times before his insured status expired, defined as approaching advanced age (20 CFR 404.1563).
>
> 9.      The claimant has completed high school. (20 CFR 404.1564).

---

[2]      The medical expert was not available to testify, so the parties agreed not to consider the expert's earlier written report. Mr. Daniels and a vocational expert testified at the second hearing.

10. The claimant is evaluated as if he does not have any acquired work skills which are transferable to the skilled or semiskilled work functions of other work (20 CFR 404.1568).

11. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 and Rule 202.14, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12. The claimant's capacity for light work had not been significantly compromised by any additional limitations. Accordingly, using the above cited rule as a framework for decisionmaking, the claimant was not disabled.

13. The claimant was not under a "disability," as defined in the Social Security Act at any time through December 31, 1992, at which time his insured status expired, and therefore at any time though the date of this decision. (20 CFR 404.1520(f)).

Appellant's App. Vol. II at 196. [3]

On appeal, Mr. Daniels raises two issues. First, he contends that in violation of 20 C.F.R. § 404.1563, the ALJ mechanically applied the grids' age category and failed to consider the fact that he was only sixty-five days short of his fifty-fifth birthday at the relevant time (i.e., when his insured status expired). Had the ALJ applied the next higher age category, Mr. Daniels would have been presumptively disabled.   See App. 2, Rule 202.06.  Second, he contends that the ALJ's pain and credibility analysis is not supported by substantial evidence

---

[3]     Although the ALJ stated that he used the grids as a "framework," it is clear he relied solely on the grids in finding Mr. Daniels not disabled.

because the ALJ did not link his conclusions to specific evidence, as he contends is required by Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995). We review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence and whether he correctly applied the relevant legal standards. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994).

## II.

## A.

Because the ALJ found that Mr. Daniels' impairments prevented him from performing his past relevant work, this case reached the fifth step of the sequential process for determining disability, at which point the Commissioner had the burden of showing Mr. Daniels could perform other work that exists in the national economy. See, e.g., Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). One of the ways the Commissioner can meet this burden is through use of the grids. See id. at 751-52. The grids are matrices of the "four factors identified by Congress--physical ability, age, education, and work experience--and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." Heckler v. Campbell, 461 U.S. 458, 461-62 (1983) (footnotes omitted). The grids thus may provide a shortcut in certain circumstances to determining whether a claimant can perform

other work by obviating the need for a vocational expert's testimony. See Trimiar v. Sullivan, 966 F.2d 1326, 1332 (10th Cir. 1992).

> Through the grids, the Secretary has taken administrative notice of the number of jobs that exist in the national economy at the various functional levels ( i.e., sedentary, light, medium, heavy, and very heavy). App. 2, § 200.00(b). "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule," the existence of jobs in the national economy for that claimant is established, and the rule "directs a conclusion as to whether the individual is or is not disabled." Id. § 200.00(a)-(b).

Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984). However, the Commissioner may not apply the grids "conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular rule." Id.; see also Gossett v. Bowen, 862 F.2d 802, 806 (10th Cir. 1988) ("Automatic application of the grids is appropriate only when a claimant's [residual functional capacity], age, work experience, and education precisely match a grid category.").

The Commissioner has established three age categories: younger person (under age fifty), person approaching advanced age (age fifty to fifty-four), and person of advanced age (age fifty-five and over). See 20 C.F.R. § 404.1563. For this case, the relevant categories are approaching advanced age and advanced age.

Mr. Daniels was nearly fifty-five years old at the time his insured status ended,[4] and thus falls near the cutoff between the two categories. The difference between the two categories is subtle but critical. The regulations provide that "[i]f you are closely approaching advanced age (50-54), we will consider that *your age*, along with a severe impairment and limited work experience, *may seriously affect your ability to adjust* to a significant number of jobs in the national economy." § 404.1563(c) (emphasis added). In contrast, "[w]e consider that advanced age (55 or over) *is the point where age significantly affects a person's ability to do substantial gainful activity*." § 404.1563(d) (emphasis added).

By necessity, the lines drawn between the categories may be arbitrary, but that does not make the categorization impermissible. Cf. Califano v. Aznavorian, 439 U.S. 170, 174 (1978) ("Social welfare legislation, by its very nature, involves drawing lines among categories of people, lines that necessarily are sometimes arbitrary. This Court has consistently upheld the constitutionality of such classification in federal welfare legislation where a rational basis existed for Congress' choice."). Moreover, in an attempt to alleviate some of the arbitrariness

---

[4]    Because disability must be shown by expiration of insured status, see Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993), the last day of Mr. Daniels' insured status (December 31, 1992) is the appropriate date for determining applicability of the grids.

of the age categories, § 404.1563(a) provides a means of softening the edges of those categories:

> We explain in detail how we consider your age as a vocational factor in appendix 2. However, we will not apply these age categories mechanically in a borderline situation.

See Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 532 (6th Cir. 1981) (noting that "[i]n line with the Secretary's acknowledgement [of the inherent difficulty in drawing precise age classifications], the regulations specifically provide that age cut-off lines are not to be applied mechanistically").

In the comments accompanying the promulgation of this regulation's predecessor, the Commissioner explained that agency "'practice over the years, in fact, has been in agreement with the comment that the passage of a few days or months before the attainment of a certain age should not preclude a favorable disability determination.'" Kane v. Heckler, 776 F.2d 1130, 1133 (3d Cir. 1985) (quoting 43 Fed. Reg. 55349, 55359 (1978)). As we noted in Lambert v. Chater, 96 F.3d 469, 470 (10th Cir. 1996), the Commissioner later repeated this notion when explaining what a borderline situation is: "A 'borderline situation' exists when there would be a shift in results caused by the passage of a few days or months." Social Security Ruling 82-46c, 1982 WL 31427, at *6 (quotation omitted); see also id. n.4 ("In the case of a borderline situation, the Secretary is directed to apply the guidelines flexibly to avoid dramatic shifts in results.").

As it applies to this case, § 404.1563(a) raises several questions. First, what is a borderline situation? Second, who has the burden of showing that a borderline situation exists or, stated differently, that the age categories should not be applied mechanically? And third, what does "not applying the age categories mechanically" mean?

B.

Although the Commissioner has expressly refused to further define what a borderline situation is, <u>see</u> Social Security Ruling 83-10, 1983 WL 31251, at *8 ("No fixed guidelines as to when a borderline situation exists are provided since such guidelines would themselves reflect a mechanical approach."), we do have his general guidance that it is a factor solely of the claimant's age and exists when the claimant is within "a few days or months" of the next category. Whatever the full extent of that range may be, we conclude that claimant here, who was only sixty-five days short of the advanced age category, does fall within the borderline situation. <u>Compare, e.g.</u>, <u>Kane</u>, 776 F.2d at 1132-33 (48 days before next age category within borderline situation); <u>Ford v. Heckler</u>, 572 F. Supp. 992, 994 (E.D.N.C. 1983) (two months within borderline); <u>Hilliard v. Schweiker</u>, 563 F. Supp. 99, 101-02 (D. Mont. 1983) (less than three months within borderline); <u>Hill v. Sullivan</u>, 769 F. Supp. 467, 471 (W.D.N.Y. 1991) (three months, two days within borderline), <u>with</u> <u>Underwood v. Bowen</u>, 828 F.2d

-9-

1081, 1082 (5th Cir. 1987) (ten months not within borderline); Lambert , 96 F.3d

at 470 (seven months not within borderline). But see Crady v. Secretary of Health

& Human Servs. , 835 F.2d 617, 618-19, 622 (6th Cir. 1987) (age within

approximately one month of next category not necessarily within borderline).

C.

Mr. Daniels' primary argument on appeal is that the Commissioner failed to

apply § 404.1563(a). Nonetheless, in his response brief, the Commissioner never

addresses whether claimant's age places him in the borderline situation, nor,

surprisingly, does he even cite § 404.1563(a). Instead, relying primarily on

Reeves v. Heckler , 734 F.2d 519 (11th Cir. 1984), the Commissioner argues that

Mr. Daniels had the burden of showing he should be classified in the higher age

bracket, and that he failed to meet this burden. [5] Under Reeves and its progeny,

---

[5] The Commissioner also makes two other arguments we find unpersuasive. First, the Commissioner contends that the grids in general, and the age categories in particular, are constitutional and not arbitrary and capricious, and that "[t]o successfully challenge the Grids, appellant must demonstrate that no reasonable basis exists for the distinctions drawn because unless the limitation imposed by Congress is wholly irrational, it is constitutional." Appellee's Br. at 7 (quotation omitted). Mr. Daniels, however, is not challenging the grids or age categories themselves; he is simply asking that the Commissioner apply one of his own regulations, about which there is no question of constitutionality or arbitrariness.

The Commissioner also argues that what constitutes a borderline situation is subject to his discretion. See id. at 6-7. To the extent that the Commissioner means that he is authorized to define what a borderline situation is, that may be true, and he has

(continued...)

-10-

regardless of whether a claimant is in a borderline situation, he may show that his

chronological age category should not apply:

> In discharging [the step-five] burden the Secretary may use the age
> factor as applied in the grids as evidence of the claimant's ability to
> adapt to a new work environment, but this age factor shall not be
> conclusive.  If the claimant then proffers substantial credible
> evidence that  his ability to adapt is less than the level established
> under the grids for  persons his age, the Secretary cannot rely on the
> age factor of the grids and  must instead establish the claimant's
> ability to adapt to a new work  environment by independent evidence.
> Cf. Texas Department of Community  Affairs v. Burdine     , 450 U.S.
> 248 . . . (1981) (establishing a tripartite scheme of burden of
> production in Title VII cases).  Applied specifically to this case, this
> burden of production scheme allows the Secretary to rely in the first
> instance on the age grids, but, if Reeves introduces evidence that his
> ability to adapt is more limited than that presumed by the grids for 37
> year-olds, the Secretary must prove Reeves's ability to adapt by other
> evidence.

Reeves , 734 F.2d at 525-26.

---

[5](...continued)
defined it solely to be a factor of age.  To the extent that he means that the ALJ in this
case exercised his discretion in determining that Mr. Daniels did not fall within the
borderline, we disagree.  The ALJ never addressed the issue of whether Mr. Daniels fell
within the borderline or whether he should be considered in the next age bracket.
Determining whether a claimant falls within a borderline situation appears to be a factual
rather than discretionary matter, and the ALJ erred by not making the necessary factual
finding.  See, e.g., Winfrey v. Chater, 92 F.3d 1017, 1026 (10th Cir. 1996).  Even were
this considered a discretionary matter, the ALJ would have abused that discretion by
failing to exercise it.  Cf. Ohlander v. Larson, 114 F.3d 1531, 1537 (10th Cir. 1997), cert.
denied, 118 S. Ct. 702 (1998).

Whatever the merits of this position outside the borderline area, [6] we find it inapplicable to borderline situations because it ignores § 404.1563(a). Applied to borderline situations, this position essentially places the burden on a claimant to prove why the grids should not be applied mechanically. Nothing in § 404.1563(a) supports this position. The regulation provides that once it is determined that a claimant is in a borderline situation, which, as noted earlier, the Commissioner has defined solely in terms of age relative to the next category, "*We*"-- meaning the Social Security Administration--" *will not apply these age categories mechanically.* " The Commissioner's argument rewrites the regulation to say essentially that "in borderline situations, we will allow you--the claimant-- to prove why the grids should not be applied mechanically." The plain language of the regulation does not allow this interpretation.

Moreover, placing the burden on the Commissioner of determining in the first instance what age category to apply is consistent with the Commissioner's existing burdens. Application of § 404.1563(a) is a step-five issue, and the burden generally is on the Commissioner at step five. See Williams , 844 F.2d at 751. Additionally, as the Third Circuit has emphasized in this context, it is the Commissioner's burden to show that a claimant's characteristics precisely match

_____

[6]     We expressed concern about the validity of this rule, outside the borderline situation, in Lambert, 96 F.3d at 470.

those of the grids. See Kane, 776 F.2d at 1132-34. Kane noted that in upholding

a challenge to the grids on the basis that they were arbitrary and capricious and

inconsistent with the Social Security Act's assurance of individual consideration,

the Supreme Court "relied on the guarantee that '[i]f an individual's capabilities

are not described accurately by a rule, the regulations make clear that the

individual's particular limitations must be considered.'" Id. at 1133-34 (quoting

Campbell, 461 U.S. at 462 n.5). The court also recognized Campbell's reference

to § 404.1563(a) and its statement that "'[t]hus, the regulations provide that the

rules will be applied only when they describe a claimant's abilities and limitations

accurately.'" Id. at 1134 (quoting Campbell, 461 U.S. at 462 n.5). Kane then

concluded that

> [i]n sum, courts recognize that the grids provide useful
> standards and allow for consistent, less complex decision-making.
> But judicial approval of these standards is premised on the assurance
> that [the Social Security Administration] will not employ them to
> produce arbitrary results in individual cases. Where a procrustean
> application of the grids results in a case that, but for the passage of a
> few days, would be decided differently, such an application would
> appear to be inappropriate. Section 404.1563(a) therefore serves an
> important purpose in the regulatory scheme, and ALJs should adhere
> to its clear language.

776 F.2d at 1134. Whether the existence of § 404.1563(a) was critical to judicial

approval of the grids is of no moment for present purposes. [7] What is critical is

---

[7]    Campbell indicated that one circuit, the Eleventh in Broz v. Schweiker, 677 F.2d
(continued...)

-13-

the fact that in a borderline situation, such as we have here, § 404.1563(a) plainly precludes mechanical application of the age categories, that is, simply considering the chronological age of the claimant at the relevant time. Failing to consider the effect of a borderline situation in turn precludes application of the grids as a basis for finding no disability, because the Commissioner will not have shown that "the claimant's characteristics precisely match the criteria of a particular rule." Channel, 747 F.2d at 579. The ALJ here failed to do that, and therefore should not have relied on the grids for his decision. As a result, we conclude that the Commissioner misapplied the law and that the case must be remanded for further consideration of this issue. [8]

D.

---

[7](...continued)
1351 (11th Cir.1982), had found the age categories arbitrary, but the Court noted that it did not have to address that issue. 461 U.S. at 464 n.8. The Court subsequently vacated Broz in light of Campbell, see Heckler v. Broz, 461 U.S. 952 (1983), and the Eleventh Circuit then reaffirmed it, 711 F.2d 957, and modified it, 721 F.2d 1297 (11th Cir.1983). Reeves was the Eleventh Circuit's first decision dealing with the age factor in light of Broz. See Reeves, 734 F.2d at 525-26.

[8] Alternatively, the district court held that even if Mr. Daniels were considered to be in the "advanced age" category, he would be considered not disabled under Rule 202.07 of the grids. That rule, however, requires a finding that the claimant possess transferable skills, and the ALJ did not find that Mr. Daniels had such skills. Because a reviewing court may not reweigh the evidence, see Hinkel v. Apfel, 132 F.3d 1349, 1351 (10th Cir. 1997), the district court's reliance on Rule 202.07 was inappropriate.

That leads to the final question--what does not applying the age categories

mechanically mean?  The Commissioner has provided virtually no guidance on

this point, [9] but again, we think  Kane  generally answered this question

appropriately:

---

[9]      Ironically, the only guidance of which we are aware that the Commissioner has provided related to this matter is his issuance of an Acquiescence Ruling critical of one of Reeves' progeny, Patterson v. Bowen, 799 F.2d 1455 (11th Cir. 1986).  Patterson is not a § 404.1563(a) or borderline case, but it does discuss Reeves' rule prohibiting mechanical application of the age categories.  See 799 F.2d at 1458-59.  As the Commissioner described the holding in this case, "[t]he Patterson court concluded that evidence of physical or mental impairments is relevant to the question of a claimant's ability to adapt to a new work environment and must be used to help establish that a person's ability to adapt is less than the level established under the medical-vocational guidelines for claimants of that age."  Acquiescence Ruling 88-1 (11), issued January 29, 1988, 1988 WL 236018, at *3.  The ruling explained how this differed from agency policy:

> The Social Security Administration (SSA) considers medical and other evidence relating to a claimant's ability to perform work-related functions despite his or her physical/mental impairments in its assessment of residual functional capacity.  Therefore, SSA does not use evidence of a claimant's physical or mental impairments a second time for the purpose of deciding that the claimant's ability to adapt to new work in terms of age alone is greater or less than that of others of that age.  SSA believes that to do so is to give double weight to the same evidence in deciding whether or not a claimant is disabled.

Id.  Although the ruling states that "SSA intends to clarify the regulation at issue in this case [apparently referring to § 404.1563] through the  rulemaking process," id., we are unaware of any subsequent clarification.

Patterson addressed the agency's position subsequently reflected in Acquiescence Ruling 88-1, and concluded that "[i]f the Secretary's position on appeal (that evidence of physical and mental impairments is irrelevant to the ability to adapt issue) were accepted, it is difficult to understand how a claimant could establish that his ability to adapt to a new job is less than that presumed under the grids for a person his age."  799 F.2d at 1459 n.5.  Patterson makes a good point--what evidence is relevant to the ability-to-adapt question?  That question is not before us, and we leave it for another day.

-16-

> According to the regulatory description of the age factor, the important difference between those of advanced age and those closely approaching advanced age is that the age of persons in the former category "significantly affects a person's ability to do substantial gainful activity," while the age of those in the latter category merely "seriously affect[s their] ability to adjust to a significant number of jobs in the national economy."
> [20 C.F.R.] § 404.1563(c), (d). The ALJ must consider which of these rules better described Kane's abilities on December 31, 1979, given the claimant's actual age and circumstances on that date.

776 F.2d at 1134. However, we do not agree with Kane that the fact that a claimant falls within a borderline situation necessarily precludes reliance on the grids. See id. (after determining which category claimant should be in, "ALJ may then use the grids primarily as a guide in making the disability determination."); see also Gonzalez v. Secretary of Health & Human Servs., 784 F.2d 1417, 1420 (9th Cir. 1986) (holding that vocational expert rather than grids should be used "where the claimant's [age] circumstances approach the upper limits of the grid guidelines"). We see no reason why, if the ALJ determines that based on whatever evidence is available, the claimant should be classified in a particular age category, the ALJ cannot then use that category in applying the grids.

To sum up, a borderline situation exists under § 404.1563(a) when a claimant's age is within a few days or months of the next higher age category. When a claimant falls within a borderline, § 404.1563(a) prohibits the Commissioner from mechanically applying the age categories in relying on the grids to determine whether a claimant is disabled. The Commissioner must

-17-

determine based on whatever evidence is available which of the categories on either side of the borderline best describes the claimant, and the Commissioner may apply that category in using the grids. Like any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence.

## E.

We turn briefly to Mr. Daniels' second argument on appeal. He contends that the ALJ's pain and credibility analysis is not supported by substantial evidence because the ALJ did not link his conclusions to specific evidence. See Kepler, 68 F.3d at 390-91. We agree with the district court that while the ALJ's assessment of pain and credibility could be better and more thorough, the ALJ did not commit reversible error.

## III.

Because Mr. Daniels' age placed him within a borderline situation, but the Commissioner nonetheless applied the age categories mechanically in violation of § 404.1563(a), the Commissioner misapplied the law in finding Mr. Daniels not disabled. Therefore, we must VACATE the judgment of the district court, and REMAND the case with instructions to remand the matter to the Commissioner for further proceedings consistent with this opinion.