[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 12, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11089
Non-Argument Calendar

_____

D. C. Docket No. 05-00075-CV-5

THERESA GOOD,

Plaintiff-Appellant,

versus

MICHAEL J. ASTRUE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(September 12, 2007)

Before TJOFLAT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Theresa Good appeals the district court's affirmance of the Social Security

Commissioner's ("Commissioner's") denial of disability and Supplemental Security Income ("SSI") benefits. After a thorough review of the record, we affirm.

Good was a 43 years old high school graduate with prior work experience as a waitress, cashier, and restaurant manager. Due to fibromyalgia,[1] asthma, and panic attacks, she could no longer work, and Good filed applications for disability and SSI benefits, alleging an onset date of July 15, 2003. Good identified the fibromyalgia as the most significant problem, stating that it caused swelling and constant pain in her lower back, neck, shoulder, ankles, and feet. Good was only comfortable sitting in her recliner with her feet elevated, but even then she would get stiff. Walking and standing aggravated her pain and increased the swelling. She could not walk more than a city block before the pain forced her to stop. She was unable to sleep more than two to four hours a night. The medication caused side effects such as drowsiness and feeling weak.

Good still drove her stick shift car about two times a week and would go to the grocery store. A few times a year she would drive her ex-husband to Lake City - about 70 miles away - to go to the VA hospital. She could bath and dress herself

---

[1] "Fibromyalgia is a chronic condition characterized by widespread pain in your muscles, ligaments and tendons, as well as fatigue and multiple tender points — places on [the] body where slight pressure causes pain." See www.Mayoclinic.com.

without assistance, and could clean, do laundry, and rake the lawn, but it took her longer to do these activities. Good cooked and washed dishes once a day. She went to church about once a month and would go out with a neighbor occasionally. Good liked to read, sew, and crochet, but she could not do these activities for long periods of time.

The disability report completed as part of her disability application was consistent with Good's testimony. It also indicated that she could lift up to twenty-five pounds frequently, and could walk or stand for four hours a day.

According to a medical consultation and residual functional capacity assessment ("RFC") performed in November 2003 by the agency physician, Good was able to perform medium work. She was able to lift 50 pounds occasionally and 25 pounds frequently; she could walk, sit, or stand for 6 hours in an 8-hour day; she had no limitations on pushing or pulling, climbing, kneeling, or crouching, reaching, handling, or fingering; and no limitations on her visual or communication skills. She was to avoid exposure to hazards, but had no other environmental limitations. The physician found Good to be only partially credible because the alleged severity of her symptoms was inconsistent with the record. The RFC did not include a diagnosis of fibromyalgia. Doctors performed a follow-up RFC evaluation in March 2004, making the same findings about Good's

abilities as noted in the 2003 RFC, except indicating that Good need only avoid moderate exposure to hazards.

Dr. Roberto Garcia treated Good from January 2004 through February 2005, reporting significant tender points likely associated with fibromyalgia. He advised Good to begin an exercise program of walking thirty minutes a day and he prescribed Elavil and Restoril[2] for pain management and insomnia. On May 15, 2004, Dr. Garcia submitted a medical opinion with the following findings: Good suffered from generalized myalgias with joint pain and insomnia. She could lift less than 10 pounds; she could sit, stand, or walk for less than 2 hours in an 8-hour day; she could sit for 15 minutes before she would need to change position; she could stand for 5 minutes before needing to change position. According to Garcia, Good would need to lie down twice a day and walk around every 10 minutes. Garcia opined that Good could not twist, stoop, crouch, or climb ladders, and she could only occasionally climb stairs. Good had moderate to severe limits on reaching, handling, feeling, pushing, and pulling. She had to avoid exposure to heat, cold, fumes, and hazards. He expected that she would be absent from work three times a month.

---

[2] According to the Physicians Desk Reference, "Elavil is prescribed for the relief of symptoms of mental depression. Some doctors also prescribe Elavil to . . . control chronic pain." Restoril is used to treat insomnia. See www.pdrhealth.com.

During this treatment period, however, Dr. Garcia noted that Good was responding to medications and doing significantly better, although at times she continued to experience pain and point tenderness.

After her claim was denied initially and upon reconsideration, Good requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ denied benefits, finding that Good's impairments were not sever enough to meet or exceed the listings. The ALJ rejected Garcia's conclusion that Good was disabled because the opinion was inconsistent with the medical records. The ALJ cited Garcia's notes that Good was responding to her medication and that he had recommended walking and swimming as part of an exercise program. The ALJ gave some weight to the findings of the state non-examining consultants, who reported that Good could perform medium work, although the ALJ considered Good's partially credible testimony and concluded that Good could perform light work.[3] Good requested review by the Appeals Council, which denied review.

Good then filed a complaint in federal court, challenging the

---

[3] The light work level requires the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "a good deal of walking or standing, or when it involves sitting most of the time[,] ... some pushing and pulling of arm or leg controls." 20 C.F.R § 404.1567(b). In this case, the disability report listed Good as capable of lifting up to 25 pounds frequently, and walking or standing for four hours a day, and the RFC indicated that she was able to lift 50 pounds occasionally and 25 pounds frequently; she could walk, sit, or stand for 6 hours in an 8-hour day; she had no limitations on pushing or pulling, climbing, kneeling, or crouching, reaching, handling, or fingering; and no limitations on her visual or communication skills. All of this is consistent with light work.

5

Commissioner's denial of benefits. She argued that the ALJ had improperly discredited Dr. Garcia's opinion and that there was no evidence to support the ALJ's finding that she could perform light duty work. She further argued that the ALJ should not have made his findings without ordering a consultative examination. The magistrate judge recommended affirming the Commissioner's denial of benefits because the ALJ had good cause to reject Garcia's opinion, as the opinion was inconsistent with the evidence in the record. The magistrate judge further found that the record was sufficient and no further examinations were necessary. The district court affirmed the magistrate judge's recommendation, over Good's objections, concluding that the ALJ had good cause and gave explicit reasons to reject Garcia's opinion. Good now appeals.

We review whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). "Substantial evidence is something more than a mere scintilla, but is less than a preponderance," Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted), and "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion," Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and

citations omitted). "Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." Id. at 1158-59 (quotation marks and citations omitted). We will not substitute our judgment for that of the Commissioner. Barnes v. Sullivan, 932 F.2d 1356, 1357-58 (11th Cir. 1996).

A claimant applying for disability benefits must prove that she is disabled. 20 C.F.R. § 404.1512; Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). The Social Security Regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520; Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). First, the claimant must show that she has not engaged in substantial gainful activity. Jones, 190 F.3d at 1228. Second, she must prove that she has a severe impairment or combination of impairments. In step three, if her impairment meets or equals a listed impairment, she is automatically found disabled. If it does not, she must move on to step four, where she must prove that she is unable to perform her past relevant work. Finally, if the claimant cannot perform past relevant work, then the burden shifts to the Commissioner in the fifth step to show that there is other work available in significant numbers in the national economy that the claimant is able to perform. Id.

On appeal, Good argues that the ALJ improperly rejected Dr. Garcia's opinion because there was no medical evidence to support the ALJ's conclusions, and the ALJ failed to order a consultative evaluation. She notes that the RFC's compiled by agency physicians did not consider her fibromyalgia and resulting pain.

The testimony or opinion of a treating physician must be given substantial or considerable weight unless there is "good cause" not to. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); 20 C.F.R. § 404.1527(d)(2). "'Good cause' exists where (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his own medical records." Id. However, the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so constitutes reversible error. Id.

Here, the ALJ identified good cause for rejecting Garcia's opinion. First, the opinion was inconsistent with Garcia's own notes. Second, the opinion was inconsistent with the other evidence in the record from Good's own testimony. Third, the ALJ was required to consider the findings of non-examining agency consultants, which also were inconsistent with Garcia's opinion. 20 C.F.R.

§ 404.1527(f)(2)(i).

Throughout Good's visits in 2004, Garcia noted that Good was generally doing well and was getting relief from the medication. Although he noted that she continued to experience pain, he repeatedly indicated that she was feeling better on the medication. These notes do not support his conclusion that she is disabled and cannot lift more than 10 pounds or sit, stand or walk for more than 2 hours in a day. In fact, nothing in Garcia's own medical records supports his disability conclusion.

Moreover, the rest of the record does not support Garcia's opinion. Good's own testimony established her ability to do basic chores, albeit slowly, and her ability to drive. We defer to the ALJ's finding that Good was only partially credible. Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) ("[C]redibility determinations are the province of the ALJ."). Additionally, the ALJ's conclusion that Good could perform light work is consistent with the medical records and Good's own testimony. Thus, in light of the record, the ALJ had good cause to reject Garcia's disability opinion and the ALJ's findings are supported by substantial evidence.

Finally, Good's argument that the ALJ failed to develop the record is without merit, and her reliance on Reeves v. Heckler, 734 F.2d 519 (11th Cir.

9

1984), is misplaced. In that case, this court vacated and remanded where the ALJ failed to order a consultative examination by an orthopedist even though the SSA's consulting doctor recommended such an evaluation. This court explained that it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision. Reeves, 734 F.2d at 522 n.1.

In the instant case, no other physician recommended an additional consultation, and the record was sufficiently developed for the ALJ to make a determination. As this court has explained, the ALJ need not order an additional consultative examination where the record was sufficient for a decision. Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999). Here, the record was sufficient, and remand was not warranted.

For the foregoing reasons, we **AFFIRM.**