[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 15-15005
Non-Argument Calendar

————————————————

D.C. Docket No. 1:14-cv-00148-MP-GRJ

BRIAN ROTHFELDT,

Plaintiff-Appellant,

versus

ACTING COMMISSIONER OF THE SOCIAL SECURITY
ADMINISTRATION,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Northern District of Florida

————————————————

(October 18, 2016)

Before JORDAN, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Brian Rothfeldt appeals the district court's order affirming the decision of the Commissioner of the Social Security Administration (the "Commissioner") to deny his application for supplemental security income, pursuant to 42 U.S.C. § 1383(c)(3). He argues that the administrative law judge (the "ALJ") erred by failing to fully and fairly develop the record when the ALJ refused to conduct IQ testing on Rothfeldt. We agree; it is impossible know whether Rothfeldt would meet the criteria for the intellectual disability without an IQ test. Upon review of the record and consideration of the parties' briefs, we reverse and remand to the district court with instructions to remand to the ALJ.[1]

## I.

Rothfeldt applied for social security benefits. After the Commissioner denied his application and reconsideration of his application, Rothfeldt requested and received a hearing before the ALJ.

At the hearing, Rothfeldt provided testimony about his limited education and work experience. He testified that the highest grade he completed was sixth grade and that he had been in special education classes. Rothfeldt explained that he cannot not read or write. His only work experience was when, approximately a decade earlier, he worked for a landscape company for about six months.

Rothfeldt described his limited social interactions with others. Although

_____

[1] Because we write only for the parties, we set out only those facts necessary to explain our decision.

2

Rothfeldt is married, he testified that he was homeless, living alone in the woods at a campsite. He explained that he did not have any friends, although he had one acquaintance to whom he would occasionally give wood carvings in exchange for doing his laundry.

Other evidence at the hearing indicated that Rothfeldt could perform some, but not all, activities of daily living. He explained that he could make meals for himself on an outdoor stove, take public transportation, go grocery shopping with food stamps, and bathe and dress himself. Although Rothfeldt could count change, he indicated that he could not pay bills.

The medical evidence before the ALJ included evaluations from two consulting psychologists. Both psychologists concluded Rothfeldt had possible borderline intellectual functioning and recommended that he receive further IQ testing to rule it out.

The ALJ determined that Rothfeldt was not disabled within the meaning of the Social Security Act and thus denied his supplemental security income application. The ALJ used the social security regulations' five-step, sequential evaluation process to determine whether Rothfeldt was disabled. *See* 20 C.F.R. § 416.920(a)(4).

First, the ALJ found that Rothfeldt had not engaged in substantial gainful activity since September 7, 2010.

Second, the ALJ found that Rothfeldt had both severe and non-severe physical impairments as well as non-severe mental impairments. The ALJ noted that Rothfeldt had not received treatment from a mental health professional for at least 10 years and was not taking medication for his mental illnesses. The ALJ concluded that Rothfeldt's lack of ongoing mental health treatment suggested satisfactory management of his mental health symptoms.

Third, the ALJ determined that that Rothfeldt did not have an impairment that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, subpart P, appendix 1. The ALJ never explicitly considered whether Rothfeldt met Listing 12.05 for intellectual disability.

Fourth, the ALJ concluded that Rothfeldt had the residual functional capacity to perform light work. In discussing Rothfeldt's residual functional capacity, the ALJ noted that Rothfeldt's counsel had requested that IQ testing be performed, and denied that request. The ALJ concluded that IQ testing was unwarranted because the record established Rothfeldt's ability to perform simple, routine, and repetitive tasks consistent with the ALJ's residual functional capacity finding.

Fifth, the ALJ found that Rothfeldt had no appreciable past relevant work. Based on Rothfeldt's age, education, work experience, and residual functional capacity, the ALJ concluded that there were a significant number of jobs in the

4

national economy he could perform, including ticket taker, housekeeping cleaner, and cafeteria attendant.

Rothfeldt appealed the ALJ's decision to the Appeals Council, which denied his request for review. Rothfeldt sought review of the Commissioner's decision in the district court, arguing that the ALJ failed to fully and fairly develop the record when he refused to probe into the facts surrounding Rothfeldt's IQ score. In a report and recommendation, the magistrate judge determined that Rothfeldt failed to show that he was prejudiced by the ALJ's refusal to order IQ testing. Rothfeldt objected, but the district court adopted the report and recommendation and affirmed the Commissioner's final decision. Rothfeldt now appeals.

II.

In Social Security appeals, we review whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards.[2] *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011). We review the decision of an ALJ as the Commissioner's final decision where, as here, the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision. *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable

---

[2] We have yet to state expressly a standard of review in cases alleging that the ALJ failed to fully and fairly develop the record. Because Rothfeldt prevails even under plenary review, we need not address this question at this time.

5

person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  We may not reweigh the evidence or decide facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

## III.

The social security regulations establish a five-step evaluation process to evaluate disability claims.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  *Id.* § 416.920(a)(4)(i).  If not, then the claimant must show at step two that his impairment is "severe," meaning it "significantly limits [his] physical or mental ability to do basic work activities."  *Id.* § 416.920(a)(4)(ii), (c).  If the claimant makes that showing, then at step three he must show that he has an impairment that meets or equals the criteria contained in the listings of impairments.  *Id.* § 416.920(a)(4)( iii).  If the claimant shows his impairment meets or equals a listing, then he is determined to be disabled.  *Id.*  If he fails to do so, then at step four, the ALJ considers the claimant's residual functional capacity to determine whether he could still perform his past relevant work activity.  *Id.* § 416.920(a)(4)(iv).  If the claimant could not do so, then the ALJ moves to step five and determines whether, in light of the claimant's residual functional capacity,

6

age, education, and work experience, he could perform other work.  If so, the claimant is not disabled; if not, the claimant is disabled.  *Id.* § 416.920(a)(4)(v).

Rothfeldt argues that the ALJ erred at step three by failing to fully and fairly develop the record when he denied Rothfeldt's request for IQ testing. Rothfeldt contends that there is a reasonable likelihood that IQ testing could help him prove a claim of disability through Listing 12.05 for intellectual disability. We agree.  The record shows that Rothfeldt had a physical impairment that imposed additional and significant work-related limitation of function, as is required by Listing 12.05(C).  In order to determine if Rothfeldt meets the other criterion for Listing 12.05(C), he must undergo an IQ test to establish whether his IQ score below 70.[3]

The ALJ has a basic duty to develop the medical record fully and fairly. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  "It is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision."  *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984).  "In evaluating the necessity for a remand, we are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice."  *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (internal quotation marks omitted).  Such gaps exist when omitted medical records are

---

[3] Alternatively, Rothfeldt could meet the criteria for Listing 12.05(B) even without an additional work-related limitation of function if his IQ testing reveals a score of 59 or less.

relevant to the applicant's claim of disability and the missing evidence might sustain the contention of an inability to work. *See id.* at 935-36.

In the third step of the sequential evaluation process, the claimant must provide specific evidence that his impairment meets or medically equals a listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability, followed by four additional sets of criteria (paragraphs A through D). 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. For an impairment to meet Listing 12.05, the claimant must satisfy both the diagnostic description in the introductory paragraph and any one of the four sets of criteria. *Id.* § 12.00(A). The introductory paragraph defines intellectual disability as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." *Id.* § 12.05. Paragraph C of § 12.05 is satisfied when a claimant presents "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* § 12.05(C).

8

Rothfeldt meets at least half of the criteria—having adaptive deficits—presented in the introductory paragraph of Listing 12.05.[4]  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  The record does not support the ALJ's implicit conclusion that Rothfeldt lacked deficits in adaptive functioning.[5]  Rothfeldt has a limited education:  he attained only a fifth grade education in special education classes and cannot read or write.  Rothfeldt also has been unable to maintain employment.  From the record, the only job he held was landscaper for six months.  Moreover, he had difficulty placing his time as a landscaper on a timeline; in 2013 he said that he had not worked in four years, although the record showed that he had not worked in approximately a decade.  Given this evidence, we reject the ALJ's implicit conclusion that Rothfeldt lacked adaptive deficits.

We acknowledge the evidence in the record that Rothfeldt could independently perform some activities of daily living.  After all, the record reflects that Rothfeldt could make meals for himself on an outdoor stove, take public transportation, and bathe and dress himself.  But he could not pay bills or manage

---

[4] The record contains little evidence on whether Rothfeldt manifested deficits in adaptive behavior before age 22, as is required by the introductory paragraph.  However, a valid qualifying IQ score creates a rebuttable presumption that a claimant manifested deficits in adaptive functioning prior to age 22.  *See Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001).

[5] Although the ALJ never explicitly discussed whether Rothfeldt met Listing 12.05(C)., a finding that Rothfeldt's impariments did not meet Listing 12.05 can be inferred from the ALJ's decision to deny Rothfeldt's request for an IQ test.  *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).

9

money beyond counting change.  Although there is evidence that Rothfeldt would occasionally barter and exchange a wood carving with an acquitance in return for help with laundry, his social interactions were limited to his wife and one acquaintance.  For the most part Rothfeldt's days consisted only of staying in the woods and doing nothing.  We simply cannot say that there is substantial evidence to show that he lacked adaptive deficits.

We cannot tell whether Rothfeldt satisfies the other portion of the introductory paragraph—"significantly subaverage general intellectual functioning"—because he never underwent an IQ test.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  Combined with his evidence of adaptive deficits, Rothfeldt would fulfill the requirements of the introductory paragraph if he presented an IQ score below 70.  *See id.* § 12.05(C).

To qualify for an intellectual disability, Rothfeldt must also meet the criteria for paragraph C of § 12.05 by presenting "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.*  The ALJ found that Rothfeldt had several severe physical impairments, including probable osteoarthritis.  This in and of itself is sufficient to meet the requirement that he have a physical impairment imposing an additional and significant work-related limitation of function.  *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir.

10

1985) (concluding that the term "'significant' requires something less than 'severe'" when considering whether an impairment is disabling).  It is of no import whether Rothfeldt's additional impairment is mental; an IQ score between 60 and 70 with an unrelated significant physical impairment satisfies the criteria for Listing 12.05(C).  *Id.* at 1516 (holding that a claimant was entitled to benefits under Listing 12.05(C) because he had an IQ score of 67 in addition to asthma and lung disease).

We cannot know if Rothfeldt meets the requirements for Listing 12.05(C), despite his severe physical impairment, because we do not know his IQ score. And we do not know his IQ score because the ALJ denied Rothfeldt's request for an IQ test.  The failure to order an IQ test thus created a gap in the evidentiary record that resulted in clear prejudice to Rothfeldt.  *See Brown,* 44 F.3d at 935.

IV.

For the foregoing reasons, we reverse and remand to the district court with instructions to remand to the ALJ.

**REVERSED AND REMANDED.**

11