**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 15 1999**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

GEORGE N. WILES,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 98-7009
(D.C. No. 92-CV-531-S)
(E.D. Okla.)

---

ORDER AND JUDGMENT *

---

Before **BRORBY** , **BRISCOE** , and **LUCERO** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument.  See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore

ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

George N. Wiles appeals from the district court's affirmance of the Commissioner's decision denying Mr. Wiles' claim for supplemental security income benefits for the period from April 1, 1990 to July 4, 1992. We review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence and whether he correctly applied the relevant legal standards. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994). Because we conclude that the Commissioner's determination that Mr. Wiles could perform the full range of medium work is not supported by substantial evidence, we reverse.

Mr. Wiles filed his application for benefits in September 1990 alleging disability since April 1, 1990, due to respiratory problems including shortness of breath (dyspnea), aching joints and weakness. The application was denied administratively in November 1991, and he brought this action in the district court. The district court vacated the Commissioner's decision because of the unavailability of the hearing transcript, and the case was remanded for a new hearing, which was held in March 1993. Following the hearing, the administrative law judge issued another decision denying benefits. The ALJ found that Mr. Wiles was severely impaired by pulmonary tuberculosis with mild decrease in respiratory function and by complaint of lower back pain, and that he was unable to return to his former work as a farm laborer, which was performed

at the heavy exertional level.  The case thus reached the fifth step of the process for determining disability.    See 20 C.F.R. § 416.920.  The ALJ found that Mr. Wiles retained the capacity to perform the full range of medium work.  Applying the Medical-Vocational Guidelines, 20 C.F.R., Pt. 404, Subpt. P, App. 2 (the "grids"), the ALJ found that Rule 203.11 dictated a finding of not disabled.

In November 1994, the Appeals Council granted review in part.  It found that because Mr. Wiles turned sixty years old on July 5, 1992, he was disabled as of that date pursuant to Rule 203.01.  It adopted the ALJ's determination that Mr. Wiles was not disabled prior to that date.  Mr. Wiles then returned to the district court (though for unknown reasons, not until January 1997) challenging the Commissioner's denial of benefits for the period from April 1, 1990 to July 4, 1992.

As the parties agree, the issue on this appeal is whether Mr. Wiles retained the residual functional capacity to do the full range of medium work during the period in question, thus permitting the Commissioner to rely on Rule 203.11 of the grids to find him not disabled.   [1]  As the parties also generally agree, this issue turns largely on the interpretation of the report prepared by the consultative

[1]    Because Mr. Wiles was of advanced age, had limited education, and previously performed only unskilled work, he would be presumptively disabled under the grids if he could perform only light or sedentary work.        See Rules 201.01 (sedentary), 202.01 (light).

examining physician, Dr. Gordon Strom, regarding Mr. Wiles' respiratory problems. We thus discuss his report in some detail.

In his October 1, 1991 report, Dr. Strom stated that Mr. Wiles' major complaints were shortness of breath, low back pain and dizziness. Dr. Strom noted that available records revealed a diagnosis of atypical tuberculosis, but that sputum cultures did not identify tuberculosis organisms. On examination, he found symmetrical expansion of the chest with decreased movement of the diaphragm, hyperresonance (above normal resonance due to overinflation of the lungs), and fine crackling rales throughout the lung field. His impressions regarding Mr. Wiles' respiratory system were "[r]estrictive lung disease with fibronodular appearance on chest x-ray, consistent with atypical tuberculosis but not diagnostic of atypical tuberculosis" and "[c]hronic smoker." Appellant's App. Vol. II at 122. His recommendations were as follows:

> Mr. George N. Wiles appears to be a debilitated, cachetic individual [2] who has findings consistent with disseminated tuberculosis. Of note, the records do not support a diagnosis of tuberculosis and in fact his cultures are negative. It's unclear whether the patient had positive cultures in the past or what other diagnostic studies were performed to identify the diagnosis of

---

[2] Mr. Wiles is six feet, five inches tall, and at the time of the exam, weighed 143 pounds. He stated that his normal weight was 149, but since the onset of the tuberculosis, his weight had dropped to as low as 135 pounds. "Cachetic" describes someone suffering general weight loss and wasting during the course of a chronic disease.

atypical tuberculosis. There is limited data on which to evaluate the patient. I do not have lung functions or an x-ray which would be extremely helpful in assessing his functional capabilities. Mr. Wiles does appear somewhat weak, however he has adequate muscle strength and does have adequate joint function. It's possible that he is limited by dyspnea. He was not significantly dyspneic at rest but an exercise study was not requested. My recommendations are that the patient be assessed with lung function testing, an adequate x-ray study be performed, and possibly consideration for an exercise study to determine whether Mr. Wiles is functionally limited. He has an extremely limited education, can barely read and write, and I suspect [is] more limited on educational grounds than physical grounds.

Id.

Dr. Strom also prepared a Medical Assessment of Ability To Do Work-Related Activities (Physical). On this form, he indicated that Mr. Wiles' abilities to lift, carry and sit were not affected by his impairment. Although Dr. Strom indicated that Mr. Wiles' abilities to stand and walk were also not affected by his impairment, Dr. Strom further explained that "[h]e is limited by dyspnea. At his own pace, he can walk." Id. at 127. Dr. Strom indicated that he could balance, stoop, crouch, and kneel frequently, but could climb and crawl only occasionally because "[patient] is short of breath." Id. Similarly, Dr. Strom found his abilities to reach, handle, feel, see, hear and speak unaffected by his impairment, but found his ability to push/pull "limited by dyspnea." Id. Finally, Dr. Strom noted that dyspnea caused environmental restrictions on Mr. Wiles' exposure to chemicals, dust, noise, fumes, and humidity.

On the same day as Dr. Strom's examination, Mr. Wiles was subjected to pulmonary function studies, although for unexplained reasons, the results of these studies were not made available to Dr. Strom. These studies showed that his total vital capacity and FEV$_1$ values fell below predicted levels, but the "computerized interpretation" was that "spirometry is within normal limits." <u>Id.</u> at 132. [3] These studies were apparently performed at rest; there is no indication they were done after exercise.

In assessing this information, the ALJ stated:

Dr. Strom specifically noted that claimant did not exhibit any dyspnea (shortness of breath) upon examination, although he complained of shortness of breath and perhaps was "limited by dyspnea." Dr. Strom recommended further evaluation to determine whether claimant was functionally limited. Further evaluation was obtained in the form of October 10, 1991 pulmonary function studies. Before bronchodilators claimant had a FEV value of 85% of the predicted, FEV1 of 89% of the predicted, and a MVV of 75% of the predicted. Although these pulmonary function studies did show some decreased function, nevertheless, they were termed as within normal limits. Although at the time he offered his report on October 1, 1991, Dr. Strom did not have the results of these pulmonary function studies, he did complete a "Medical Assessment of Ability to do Work-Related Activities (Physical)". Therein, he gave his opinion that claimant was not limited with respect to lifting and carrying. He noted that claimant was limited with respect to his ability to walk due to dyspnea, but this conclusion appears to have been based strictly on

---

[3]    This report also stated that "[t]his computer generated report suggests possible medical significance of data reported to it. This report is not to be used in the clinical management of the patient until confirmed by: Dr. _____." Appellant's App. Vol. II at 132. The blank was not filled in, and there is no indication that a doctor ever confirmed or reviewed the results of the report.

claimant's subjective complaints, in view of the fact that Dr. Strom had previously noted in his narrative report that claimant was not short of breath on examination, but should be further evaluated to determine whether he was functionally limited. Nevertheless, Dr. Strom, at this time, noted that although claimant stated he was limited due to shortness of breath, nevertheless he further stated that he was able to walk alright at his own pace.

Id. at 19-20.

Because this case reached step five of the process for determining disability, the Commissioner had the burden of proving that Mr. Wiles could perform work existing in the national economy. See Daniels v. Apfel , 154 F.3d 1129, 1132 (10th Cir. 1998). To rely on the grids to find Mr. Wiles not disabled, the Commissioner had to prove, inter alia, that he could fully perform the exertional requirements the particular grid or rule demands, see id., which in this case was the ability to perform medium work, see Rule 203.11. Medium work requires lifting fifty pounds at a time, with frequent lifting of objects weighing up to twenty-five pounds, and standing or walking for approximately six hours in an eight-hour day. See S.S.R. 83-10, 1983 WL 31251, at *6. Moreover, the Commissioner had the burden of showing that Mr. Wiles could perform medium work on a sustained or regular and continuing basis, meaning the equivalent of eight hours a day for five days a week. See S.S.R. 96-8P, 1996 WL 374184, at *2; Byron v. Heckler , 742 F.2d 1232, 1235 (10th Cir. 1984).

-7-

By itself, Dr. Strom's ambiguous opinion does not provide substantial evidence that Mr. Wiles can perform the full range of medium work because it fails to show that he could perform medium work on a sustained basis. Mr. Wiles' primary respiratory complaint was shortness of breath on exertion which would seem to preclude working on a sustained basis. While Dr. Strom noted he was "not significantly dyspneic at rest," he did not examine Mr. Wiles after exercise, and he questioned whether Mr. Wiles was "functionally limited," which in this situation means whether Mr. Wiles would be able to work on a sustained basis. [4] On the medical assessment form, Dr. Strom repeatedly noted that Mr. Wiles was limited in certain functions by dyspnea. Moreover, his ambiguous statement that Mr. Wiles could walk as long as he did it "[a]t his own pace" does not support the conclusion that he could perform the full range of medium work. The ALJ disregarded this statement on the ground that it apparently was based on Mr. Wiles' subjective complaints. While that may be true, it does not mean that Dr. Strom concluded that Mr. Wiles had an unrestricted ability to walk.

Further, we do not agree with the Commissioner that any concerns Dr. Strom had regarding the degree of Mr. Wiles' dyspnea on exertion were

---

[4]     Mr. Wiles does not challenge the Commissioner's finding that he could perform the lifting and carrying requirements of medium work.

resolved by the pulmonary function studies. To determine whether Mr. Wiles was functionally limited, Dr. Strom recommended pulmonary function studies, x-rays, and possibly exercise studies, but only the pulmonary function studies were performed. Nothing in the record indicates that these studies, apparently taken while Mr. Wiles was at rest, show that he is not dyspneic on exertion. Additionally, the results of these studies--which generally fell below predicted values even after bronchodilators--were never reviewed or interpreted by a physician despite the statement that they were not to be used until confirmed by a physician. [5]

---

[5] We also note that Dr. Strom identified a number of environmental restrictions on Mr. Wiles' ability to work that would preclude reliance on the grids. See Talbot v. Heckler, 814 F.2d 1456, 1460 (10th Cir. 1987). The Appeals Council found that because Mr. Wiles smoked a pack of cigarettes a day, worked part-time for several winters feeding cattle, and did not make any specific complaints regarding exposure to environmental conditions, the restrictions were not significant. There is no medical evidence, however, supporting the Appeals Council's conclusion.

Mr. Wiles also contends that the Commissioner erred by rejecting the opinion of his treating physician that he was totally disabled due to shortness of breath on minimal exertion because he was unable to obtain medication for his tuberculosis. While we agree with the Commissioner that this opinion is unsupported by any clinical findings, we disagree that it is necessarily inconsistent with Dr. Strom's report. Because we conclude that the Commissioner's decision is otherwise not supported by substantial evidence, we do not need to decide whether the Commissioner violated the treating physician rule in rejecting this opinion.

Finally, we note that the Commissioner based his decision that Mr. Wiles could perform medium work in part on his testimony that, for several winters, he had worked four hours a day feeding cattle, which he did in exchange for his rent. Mr. Wiles' part-time work at an unknown pace on an intermittent basis does not demonstrate that he could perform, on a sustained basis, the full range of medium work eight hours a day for five days a week,      see Byron , 742 F.2d at 1235, nor does it resolve Dr. Strom's concerns.

We therefore conclude that the Commissioner failed to meet his burden of showing that Mr. Wiles could perform the full range of medium work.  His reliance on the grids for proving that Mr. Wiles could perform work in the national economy was error.  This case has dragged on for over eight years, and at this point, the record would support a finding of disability at step five.  "When a decision of the [Commissioner] is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits."    Ragland v. Shalala  , 992 F.2d 1056, 1060 (10th Cir. 1993).  Under the circumstances, we conclude an award of benefits covering the period in question is appropriate.      See id. (remanding for award of benefits "[i]n light of the [Commissioner's] patent failure to satisfy [his] burden of proof at step five, and the long delay that has already occurred as a result of [his] erroneous disposition of the proceedings").

The judgment of the district court is REVERSED, and the cause is REMANDED with directions to remand, in turn, to the Commissioner for an award of benefits.

Entered for the Court


Mary Beck Briscoe
Circuit Judge