**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 26 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JERRY S. SHOAF,

Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

Defendant-Appellee.

No. 99-3174
(D.C. No. 97-CV-2246-KHV)
(D. Kan.)

---

**ORDER AND JUDGMENT** *

---

Before **KELLY** , **HENRY** , and **MURPHY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Jerry S. Shoaf appeals from the order of the district court affirming the final decision of the Commissioner of Social Security denying her application for Social Security disability insurance benefits, and from the court's denial of her request for a remand based on new evidence. In a decision that now stands as the final decision of the Commissioner, the administrative law judge denied benefits at step five of the five-part sequential process for determining disability. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and review the Commissioner's decision to determine whether it is supported by substantial evidence and whether the correct legal standards were applied, *see Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). We review the district court's denial of a motion for remand for an abuse of discretion. *See Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990).

Ms. Shoaf filed her application for benefits in 1994 claiming she became disabled in March 1980, primarily due to back and right hand problems including pain. Because her insured status expired at the end of 1985, she had to show that she was disabled by that date. *See Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993). Following a hearing in 1996, the ALJ found that she had severe impairments involving her back and hands, and that her residual functional capacity was restricted to sedentary work with the

following limitations: she had no significant grip strength or ability to perform fine hand manipulation with her right hand; she could not lift more than one pound; and she required the option to alternate between sitting and standing at fifteen minute intervals. As a result, she was unable to perform her past relevant work as an order filler and small electronics assembler, which were performed at the light to heavy exertional levels.

At this point, the burden shifted to the Commission to show that Ms. Shoaf could perform other work that exists in the national economy. *See Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998). The ALJ found that, at the end of 1985, she was a younger individual, she had a limited education, and she had no transferable work skills. Relying in part on a vocational expert's testimony that a person with her impairments could perform the job of surveillance system monitor, which existed in significant numbers in the national economy, and on the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App.2 (the "grids"), Rules 201.18 and 201.24, the ALJ found that Ms. Shoaf was not disabled.

On appeal, Ms. Shoaf raises issues involving the ALJ's analysis of her credibility and his determination that she could perform the job of surveillance system monitor. She also submitted new evidence to the district court, relevant to both of these broad issues, that she contends warrants a remand and further consideration by the Commissioner. *See* 42 U.S.C. § 405(g) (court may order

remand for Commissioner's consideration of additional evidence "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"). Because we agree the new evidence warrants a remand, we discuss her arguments in that context.

In his analysis of Ms. Shoaf's credibility regarding her allegations of pain, *see Luna v. Bowen*, 834 F.2d 161, 164-66 (10th Cir. 1987), the ALJ stated that

> [d]espite the allegations of severe back pain since March 1980, the record reveals no complaints of any such discomfort until September 1982, at which time claimant told Dr. Pazell that she hurt her back lifting a cactus. . . . Thus, despite claimant's allegations of constant, severe back pain associated with profound functional restrictions from 1980 through 1985, the medical evidence reveals only occasional flares of back pain which were quickly alleviated by medications and treatment. Accordingly, claimant's testimony regarding her back pain is inconsistent with her treatment history
> . . . .

Appellant's App. Vol. I at 24-25. In seeking a remand in the district court for consideration of additional evidence, Ms. Shoaf submitted medical records related to back surgery (spinal fusion) she underwent in March 1981, in the midst of the period in which the ALJ said she did not complain of discomfort or seek treatment. Treatment notes from March 1981 stated that she "has had a long history of spondylolysis with spondylolisthesis," and that "[s]he has been followed, worked up, treated conservatively, all to no avail." *Id.* Vol. II at 352. These records apparently had not been available from the medical sources. After

-4-

proceedings before the Commissioner ended, Ms. Shoaf's counsel obtained them from the counsel who had represented her in workers compensation proceedings.

The district court held that the difficulty in locating these records was good cause for not having submitted them in an earlier proceeding. It initially held that a remand was appropriate for the Commissioner to consider them and determine whether Ms. Shoaf was disabled during the closed period from March 30, 1980, though October 7, 1982. However, on the Commissioner's motion for reconsideration, the court held that a remand was unnecessary. The Commissioner argued, and the court agreed, that Ms. Shoaf would be entitled to benefits only if she could show that she was continuously disabled from December 31, 1985, though June 1993, when her "waiting period" for benefits began, citing 20 C.F.R. §§ 404.315, 404.316, 404.320. She thus could not be eligible for benefits for the closed period by itself.

Ms. Shoaf argues that the new evidence relates to more than just whether she was disabled during the closed period. She argues that it also counters the ALJ's conclusion that her credibility was suspect because the objective medical evidence failed to show she experienced significant back pain and sought treatment during this period. We agree with her. The ALJ's credibility analysis emphasized the lack of medical evidence of pain and corresponding treatment, and this new evidence is clearly relevant to that analysis. Moreover, the

credibility analysis affects the ALJ's consideration of subjective evidence relevant to the entire period at issue, and in particular, her status in December 1985. Thus, the evidence's relevance is not confined to the March 1980 to October 1982 period, as the Commissioner argues.

"A remand is proper when a reviewing court concludes that the [Commissioner's] decision might reasonably have been different had that [new] evidence been before him when his decision was rendered." *Cagle v. Califano*, 638 F.2d 219, 221 (10th Cir. 1981) (quotation omitted). The new evidence Ms. Shoaf submitted is both probative and directly relevant to the ALJ's credibility analysis, and we cannot guess at how this evidence would affect his analysis. We agree with the district court's determination, unchallenged by the Commissioner, that there is good cause for not submitting this evidence earlier. We therefore conclude that a remand for consideration of this evidence is appropriate.

Our determination in this regard is bolstered by other aspects of the ALJ's credibility analysis. While we may not agree with Ms. Shoaf that deficiencies in the analysis require reversal, we do agree that the evidence undermining her credibility was not especially strong. Two parts of the ALJ's analysis warrant brief comment. From 1973 to 1980, when Ms. Shoaf claims she became disabled, she worked as an order filler and electronics assembler making from $3.50 to

$10.00 an hour. Her earnings record showed that she made $4,036, $5,334, $5,852, $11,490, $12,431, $10,461, $7,681, and $6,041 in these eight years, respectively. The ALJ relied solely on this earnings history, which he described as "reveal[ing] sporadic work activity and generally low levels of income," as evidence that "claimant has never been highly motivated to work even before her alleged disability began." Appellant's App. Vol. I at 26. The ALJ did not ask Ms. Shoaf to explain why her earnings were so "sporadic" or were at such "low levels." We cannot agree that, by itself, Ms. Shoaf's earnings history reveals a lack of motivation to work.

The ALJ also found that Ms. Shoaf's failure to apply for benefits until 1994 suggested "that her condition did not become severely limiting until much later than she claims" and lessened her credibility. *Id.* As support for this conclusion, the ALJ cited a January 1996 letter from a physician that the ALJ said indicated her severe problems with osteoarthritis and pseudogout did not begin until five or six years earlier. However, the physician's letter actually stated that she had a history of arthritis "going back *at least* 5 to 6 years." *Id.* at 192 (emphasis added). Additionally, Ms. Shoaf testified that the reason she did not apply for benefits until 1994 was that she did not know she might be eligible for them until that time, when her daughter told her. She stated that she thought a lump sum workers compensation payment she received in 1982 disqualified her from receiving

-7-

Social Security benefits. The ALJ should have accurately assessed the physician's letter and addressed Shoaf's explanation for why she delayed applying for benefits before using this delay against her. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). (On the other hand, the fact that she received the workers compensation payment may undercut Ms. Shoaf's argument that the reason she did not obtain more medical treatment for her conditions was not because the conditions were not severe, as the ALJ found, but was because she could not afford medical treatment.)

The other new evidence Ms. Shoaf submitted to the district court was a report from vocational expert Dr. John Bopp stating, in part, that contrary to the testimony of the vocational expert at the hearing (Marianne Lumpe), there were no surveillance system monitor positions in the Greater Kansas City area. Ms. Lumpe testified at the hearing that there were 290,000 surveillance system monitor positions nationwide, 1500 in Kansas, and 850 in the Greater Kansas City area. Ms. Lumpe relied on the Dictionary of Occupational Titles for her description of this job, and the DOT describes the job as monitoring the premises of *public transportation terminals*. *See* DOT Vol. I, 379.367-010. In his report, Dr. Bopp stated that he surveyed rail, bus and air transportation systems in the Kansas City area, and found that none used surveillance system monitors.

The fact that there may not be any of these positions near where Ms. Shoaf lives is not a problem per se. *See Trimiar v. Sullivan*, 966 F.2d 1326, 1329 n.8 (10th Cir. 1992). What we do see as a problem is the striking conflict between the two experts' opinions regarding the existence of these positions in the area, presenting the possibility that they are not talking about the same position. Considering that the position is limited to monitoring public transportation systems (and does not include, for example, office buildings), Dr. Bopp's opinion does not appear on the surface to be out of line, and it raises questions about the reliability of Ms. Lumpe's testimony. *See id.* at 1330-31 (noting relevant factors in determining whether there are significant number of jobs, including reliability of vocational expert's testimony). Moreover, it does not appear that either the experts' opinions or the ALJ's analysis focused on the existence of these jobs *in 1985*, the relevant time frame. At the hearing in 1996, the ALJ's questions and Ms. Lumpe's answers regarding the jobs Ms. Shoaf could perform were all in the present tense, as was Dr. Bopp's report.

Dr. Bopp also stated that he did not believe that, given Ms. Shoaf's seventh grade education and lack of transferable skills, she could perform the job of surveillance system monitor. This opinion is consistent with Ms. Shoaf's argument to the Appeals Council that she could not perform at the language and reasoning development level that the DOT indicates this position requires. *See*

-9-

DOT Vol. I, 379.367-010; Vol. II at 1011. While it is difficult on this record to relate Ms. Shoaf's education and skill level to the DOT requirements, this is an appropriate area for vocational expert testimony and further analysis by the ALJ. *Cf. Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999) (discussing vocational expert testimony in relation to DOT).

Thus, while there does not appear to be good cause for Ms. Shoaf's failure to present this vocational evidence to the Commissioner, because we conclude a remand is in order on the credibility issue, we think it would be appropriate for the Commissioner to consider this vocational evidence as well. *Cf. Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991).

Finally, Ms. Shoaf also presents two arguments unrelated to the new evidence. First, she argues that she should have been presumed disabled under § 201.00(h) of the grids because the ALJ found she had no grip strength or fine manipulation ability in her right hand. In discussing situations in which a younger individual who does not precisely meet a grid rule presuming disability may, nonetheless, be found disabled, § 201.00(h) gives the following example:

> A permanent injury of the right hand limits the individual to sedentary jobs which do not require bilateral manual dexterity. None of the rules in appendix 2 are applicable to this particular set of facts, because this individual cannot perform the full range of work defined as sedentary. Since the inability to perform jobs requiring bilateral manual dexterity significantly compromises the only range of work for which the individual is otherwise qualified (i.e., sedentary), a finding of disabled would be appropriate.

Obviously, this section supports a finding of disability here, but by using the phrase, "would be appropriate," it does not mandate such a finding.    *See Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990).

Ms. Shoaf also contends that the ALJ's failure to identify more than one occupation that she could perform was error. We find no merit in this argument. As long as there are a significant number of jobs that the claimant can perform, it does not matter whether these jobs all fall within one occupation.    *See Evans v. Chater*, 55 F.3d 530, 532-33 (10th Cir. 1995).

The judgment of the district court is REVERSED, and the case is REMANDED to the district court with directions to remand the case to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge