**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 30 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ROBERT ROTUNNO,

      Plaintiff-Appellant,

v.

LARRY G. MASSANARI,[*] Acting
Commissioner of the Social Security
Administration,

      Defendant-Appellee.

No. 00-2373
(D.C. No. CIV-99-1011-MV/LCS)
(D. N.M.)

**ORDER AND JUDGMENT** [**]

Before **TACHA** , Chief Judge, **BALDOCK** , Circuit Judge, and **BRORBY** , Senior
Circuit Judge.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

[*]    On March 29, 2001, Larry G. Massanari became the Acting Commissioner
of Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Massanari is substituted for Kenneth S. Apfel as the
appellee in this action.

[**]    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Robert Rotunno appeals from the district court's judgment affirming the Commissioner's decision denying Mr. Rotunno's application for Social Security disability insurance benefits.  Like the district court, we review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).  For the reasons explained below, we affirm.

Mr. Rotunno applied for benefits in January 1995 alleging that he became disabled in October 1985 due to injuries to his right shoulder, right knee and back.  His insured status expired in March 1987, so he had to show that he was totally disabled prior to that date.  *See Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360 (10th Cir. 1993).  In May 1996, an administrative law judge determined, at step five of the five-part sequential process, *see* 20 C.F.R. § 404.1520, that Mr. Rotunno was not disabled.  On appeal to the district court, the court granted the Commissioner's motion to remand the case for a supplemental hearing to obtain vocational expert testimony and to allow Mr. Rotunno the opportunity to submit additional evidence.

Following the supplemental hearing, a different ALJ again determined that Mr. Rotunno was not disabled during the relevant period. The ALJ found him severely impaired primarily due to right shoulder problems, and apparently also due to a problem with his right knee, but that the severity of his impairments did not meet a listing requirement. The ALJ determined that he could not return to his past relevant work as a carpenter, but that he

> retained a residual functional capacity which supported work activities which allowed him to alternate sitting, standing and walking throughout the workday, which required no overhead use of his right upper extremity, and which required no lifting of more than 45 pounds. Nonexertional factors did not significantly alter this work capacity.

Appellant's App. Vol. II at 239-40. Relying on the testimony of a vocational expert, the ALJ determined that Mr. Rotunno could perform the job of security or gate guard and that this job existed in significant numbers in the national or regional economy. The ALJ therefore concluded that Mr. Rotunno was not disabled. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

On appeal, Mr. Rotunno first contends that the ALJ erred in concluding that he had the residual functional capacity (RFC) to perform the job of guard. [1] This argument takes two tacks. In one, Mr. Rotunno contends that the ALJ ignored

---

[1] The Commissioner incorrectly contends that Mr. Rotunno waived this issue by failing to raise it in the district court. *See* Appellant's App. Vol. 1 at 17-20.

vocational expert testimony that demonstrates he could not perform this job. He relies, however, on answers to questions that contained hypothetical impairments that the ALJ ultimately did not accept, i.e., the need to use a cane, an inability to stand for more than twenty minutes or pick up more than five pounds, and a need to lie down two to three hours a day. [2] The ALJ based his decision on responses to hypothetical questions that reflected the impairments the ALJ did accept, and those responses provided an adequate basis for the ALJ's decision. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

Mr. Rotunno also contends, in challenging the ALJ's determination regarding his ability to perform the guard job, that the Dictionary of Occupational Titles classifies this job at the light exertional level, that he cannot perform the full range of light work because of his need to alternate sitting and standing, and that the ALJ failed to elicit vocational expert testimony reconciling the difference, citing *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999). To the contrary, the vocational expert specifically testified that while the guard job was classified as light work, it could be performed sitting or standing at will, again providing adequate evidence for the ALJ's decision.

_____

[2] The ALJ rejected the first and last of these claimed limitations based on his determination Mr. Rotunno lacked credibility in asserting these limitations, a determination we affirm below.

-4-

Mr. Rotunno next contends that the ALJ should have found him disabled under the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, also know as the "grids." In particular, he contends he met the requirements for a determination of disability under Rule 201.10 of the grids. This rule, however, applies to someone whose maximum exertional level is sedentary. The ALJ determined that Mr. Rotunno's maximum exertional level was light, with a sit/stand option and limited use of his upper right extremity. Rule 201.10 therefore does not apply to Mr. Rotunno. *See Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998) (grids direct conclusion whether claimant disabled or not when relevant vocational and RFC findings "coincide with all of the criteria of a particular rule") (quotation omitted). The rule that covers an RFC limited to light work, given the relevant vocational factors, directs a finding of not disabled. *See* Rule 202.11.

Finally, Mr. Rotunno contends the ALJ erred in finding that he lacked credibility generally and in a number of specific areas affecting his ability to work. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). First, Mr. Rotunno argues that the ALJ erred in rejecting his contention that he used a cane or crutches during the relevant period. Mr. Rotunno

underwent knee surgery in January 1986, and the ALJ noted that one doctor, in conjunction with an examination of his shoulder, indicated in August 1986 that he had had good results from his knee surgery thus far. The ALJ further stated that there was no indication Mr. Rotunno required further medical attention for his knee before his insured status ended. Additionally, the ALJ pointed to activities he was performing in 1995, connected with buying and fixing up rental properties, and stated that there was no evidence his knee condition had deteriorated from the date last insured to 1995. This is sufficient evidence to support the ALJ's conclusion.

Mr. Rotunno next contends the district court erred in using his lack of medical treatment as evidence that his impairments were not as serious as he contended. *See id.* (noting that frequency of medical contacts is relevant to subjective complaints of severity of impairment). He contends that he could not afford medical treatment during the relevant period because his Worker's Compensation insurer had stopped paying his medical bills when he settled with the insurer and he could not afford medical treatment on his own. The Commissioner points out that the settlement included a $60,000 cash payment. We see no error in the ALJ's reliance on this credibility factor.

Mr. Rotunno claims the ALJ erred by finding he did not need to "nap" for several hours a day when in fact he claimed only that he needed to lie down

frequently.  It is clear, however, that the ALJ was referring to his alleged need to lie down.  The ALJ found this allegation not credible because Mr. Rotunno never reported this need to lie down to any doctor, and no doctor indicated he had any condition requiring such rest.  This is a sufficient basis for the ALJ's decision.

Finally, Mr. Rotunno argues that the ALJ erred in rejecting his claim of limited manual dexterity in his right hand.  In December 1986, one of his doctors indicated that Mr. Rotunno reported occasional numbness in his right hand, but the doctor's subsequent notes do not further reflect this complaint, and an examination revealed no neurological deficits in his right arm.  Again, we see no error in the ALJ's rejection of Mr. Rotunna's allegation of an impairment in manual dexterity.

AFFIRMED.

Entered for the Court

Wade Brorby
Senior Circuit Judge